# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS HENDON,<br><br>            Petitioner,<br><br>   v.<br><br>RAMSEY, et al.,<br><br>            Defendants. | Civil No. 06cv1060 J (NLS)<br><br>**ORDER:**<br><br>**1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; and**<br><br>**2) GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO DISMISS;** |

    Plaintiff Carlos Hendon ("Plaintiff"), a California state prisoner proceeding *pro se*, has filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983, in which he alleges that prison medical staff forcibly drugged him in violation of his civil rights. [Doc. No. 50.] Defendants move to dismiss the FAC for failure to state a claim upon which relief can be granted and for failure to file a timely government claim prior to filing suit in federal court. [Doc. No. 51.] Plaintiff opposes the motion. [Doc. No. 53.] After a thorough review, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

## *Background*

    Plaintiff is an inmate committed to the custody of the California Department of Corrections ("CDC") and is currently housed at California State Prison—Sacramento ("CSP

Sacramento") in Represa, California. This action concerns the administration of anti-psychotic medications to Plaintiff while he was housed at R.J. Donovan Correctional Facility ("RJDCF") in San Diego, California. (FAC at ¶ 12.) Plaintiff has named multiple defendants in his complaint, including: RJDCF psychiatrist Ramsey; RJDCF psychologist M. Parker; and unnamed medical contractor; RJDCF correctional officers Woods, Hernandez, Millspaugh, Carroll, Lizarraga, Zieber, Clifford, Pascuzzi, Lang, and Doe; as well as RJDCF clinicians Petersen, Yumiko, Ridley, Marquez, Thompson, and Ibarra.[1] (*Id.* at ¶¶ 4-8.)

According to the FAC, between 2002 and July 13, 2004, Defendants Ramsey and Parker diagnosed Plaintiff as being suicidal, psychotic, and a potential danger to others. As a result, Plaintiff received "mental health crisis bed treatment." (FAC at ¶ 12.) Defendants Ramsey and Parker prescribed psychotropic drugs and ordered Plaintiff to take the prescribed medication against his will. (*Id.*) Various defendants aided in forcibly medicating Plaintiff by extracting him from his cell and/or administering the medications to Plaintiff. (*Id.* at 14.) Plaintiff suffered side effects from the administered medications, including stiffness, a shuffling gait, extreme weight gain in excess of fifty pounds, high blood pressure and cholesterol, dry mouth, hallucinations, and symptoms akin to having Parkinson's disease. (*Id.* at ¶ 17.) Plaintiff claims that these side effects continued after the drugging stopped. (Id. at ¶ 18.)

Plaintiff alleges that CDC policy requires notice and a hearing in front of a medications review panel prior to drugging a prisoner forcibly, but that he received neither. (Id. at ¶ 16 (citing *Keyhea v. Rushen*, 178 Cal. App. 3d 526 (1986)).) Under California law, the *Keyhea* procedures Plaintiff cited in his FAC govern the involuntary administration of anti-psychotic medications.[2] The *Keyhea* injunction provides procedural requirements and substantive

---

[1] The Court's docket does not reflect that Ridley, Lang, Carroll, Thompson, or Millspaugh were served with a copy of the Summons and Complaint within the time allotted by Federal Rule of Civil Procedure 4(m). Thus, the Court lacks personal jurisdiction over those purported defendants and they are not proper parties to the action. A federal court does not have jurisdiction over a defendant unless the defendants has been properly served. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

[2] In *Keyhea v. Rushen*, 178 Cal. App. 3d 526 (1986), the California Court of Appeal "upheld a consent decree affirming the right of state prisoners to refuse anti-psychotic medications except under certain limited circumstances." *In re Qawi*, 81 P.3d 224, 235 (Cal. 2004).

standards for medication of different durations.[3]  Involuntary medication more that 24 days after the initial medication requires a court order.[4]  Plaintiff's allegations under *Keyhea* are unclear.  Plaintiff, however, appears to allege that he was subjected to repeated mental health crisis bed treatments whose duration and frequency violated *Keyhea*'s procedural safeguards.  (*See* FAC at ¶ 14.)  Plaintiff attaches records discussing a particular treatment that began on May 7, 2004, and lasted through July 13, 2004, at RJDCF.  (*See* FAC, Appx. A.)

Based on these facts, Plaintiff alleges that he was denied due process of law in violation of his Fourteenth Amendment rights, and also alleges state law claims of negligence against all defendants for negligence in their official capacities.  (FAC at ¶¶ 19-21.)  Plaintiff further alleges that the actions of the collective defendants constitute deliberate indifference to his medical needs in violation of his Eighth Amendment rights.  (*Id.* at ¶¶ 22-23.)  Plaintiff seeks compensatory damages for the physical and emotional injuries sustained as a result of the unwanted administration of anti-psychotic drugs, and requests punitive damages be awarded against all named defendants except the medical contractor.  (*Id.* at p. 8.)

Defendants move to dismiss, arguing that Plaintiff fails to state a claim upon which relief can be granted under the Eighth and Fourteenth Amendments, and his state law claims of negligence should be dismissed for failure to file a timely government claim pursuant to the

---

[3] In order for an individual to be involuntarily medicated in excess of three days, a notice of certification must be signed by both the chief psychiatrist at the treatment facility and a physician or psychologist who participated in the evaluation of the prisoner, and it must be delivered to the prisoner.  The notice of certification permits the involuntary medication of the prisoner for no more that 21 additional days, and the prisoner is entitled to a certification review hearing within 10 days of the initial voluntary medication.  *See In re Qawi*, 81 P.3d 224 at 236.

[4] *See* www.oah.dgs.ca.gov/laws/keyhea.asp ("*Keyhea* Inj.") (stating that "Penal Code Section 5054 vests 'the responsibility for the care, custody, treatment, training, discipline and employment of persons confined' in the California Department of Corrections (CDC).  CDC is required by *Keyhea v. Rushen*, . . . to seek a court order authorizing the administration of long term involuntary anti-psychotic medication to individuals confined within the jurisdiction of the CDC who, as a result of a mental disorder, are a danger to others or to themselves or are gravely disabled and incompetent to refuse medication.  Penal Code Section 2600, as amended by Chapter 555, Statutes of 1994, requires that the judicial hearing mandated in this jurisdiction be conducted by an administrative law judge (ALJ).")

California Tort Claims Act, Cal. Gov't. Code §§ 900 *et seq.* (Defs.' Mem. P. & A. Supp. Mot. Dismiss ("Defs.' Mem.") at 1.)

### *Legal Standard*

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in Plaintiff's FAC and must also construe the FAC, and all reasonable inferences therefore, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff will ultimately prevail, but solely whether he has stated a claim upon which relief could be granted. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). When the plaintiff is appearing pro se, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompso*n, 295 F.3d at 895; *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). This rule of liberal construction is particularly important in civil rights cases. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982.)

**1.     Eighth Amendment Claim: Deliberate Indifference to Medical Needs**

Plaintiff alleges that Defendant Medical Contractor's deliberate indifference to his serious medical needs violated his Eighth Amendment rights. Plaintiff alleges that Defendant Medical Contractor created or continued a policy of allowing Defendant physicians to determine that he should be forcibly drugged despite no immediate incidence or threat of violence. (FAC at ¶ 22.) Plaintiff also alleges that the other named defendants' failure to intervene to prevent the forcible drugging constituted deliberate indifference to his serious medical needs. (*Id.* at ¶ 23.) Defendants argue that Plaintiff fails to state a claim under the Eighth Amendment because his allegations demonstrate that the Defendants treated his medical needs and, ergo, were not deliberately indifferent to his serious medical needs. (Defs.' Mem. at 5.) Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscriptions against

cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay, or intentional interference with a prisoner's medical treatment. *Id.* at 104-05; *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 459-60 (9th Cir. 1980) (delay of six days in treating hepatitis was sufficient to state a deliberate indifference claim); *Jones v. Johnson*, 781 F.2d 769, 770-71 (9th Cir. 1986) (allegation that jail medical staff would not treat plaintiff's painful hernia until it became strangulated stated a claim against medical personnel). An actionable Eighth Amendment violation first involves an objective inquiry into the seriousness of an inmate's medical need. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (discussing both the objective and subjective elements of an Eighth Amendment claim). A serious medical need exists if the "failure to treat a prisoner's condition would result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104).

Deliberate indifference lies somewhere between negligence and "conduct engaged in for the very purposes of causing harm or with the knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see also Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991). To succeed on a deliberate indifference claim, a plaintiff must also demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 839-40 (adopting "subjective recklessness" as standard for Eighth Amendment claims); *Clement*, 298 F.2d at 904-05 (applying subjective state-of-mind element in medical treatment context). Thus, an official must: (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists; (2) actually draw the inference; but (3) nevertheless disregard the risk to the inmate's health. *Farmer*, 511 U.S. at 837-38.

Defendants argue that Plaintiff fails to state a valid Eighth Amendment claim as to any of the named defendants because, by his own allegations, Plaintiff has demonstrated that

Defendants were in fact attempting to treat a serious medical condition, rather than deliberately acting with indifference to the condition. Additionally, Plaintiff fails to put forth any facts to show that any of the defendants possessed the necessary state of mind to support an Eighth Amendment violation. (Defs.' Mem at 4-5.)

Construing the facts in the light most favorable to the Plaintiff, the Court **FINDS** that Plaintiff fails to allege a cognizable Eighth Amendment claim. An inmate must allege facts sufficient to indicate a culpable state of mind on the part of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). Accordingly, neither a difference of opinion about the proper course of treatment nor a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amounts to deliberate indifference. *See, e.g.*, *Toguchi v. Chang*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Here, Plaintiff has not alleged a single fact to demonstrate that Defendant or any of the defendants acted with the requisite "culpable state of mind," nor has he provided sufficient facts regarding the inadequacy of his treatment. Instead, Plaintiff alleges that the treatment was involuntary rather than inadequate. The Court agrees with Defendants' assertion that "the gravamen of Plaintiff's claim is that Defendants 'forcibly drugg[ed him] with anti-psychotic medications *without due process*.'" (Defs.' Mem. at 6.) Therefore, Plaintiff's claim is more appropriately analyzed under the Fourteenth Amendment's Due Process Clause. Accordingly, the Court **GRANTS IN PART** Defendants' motion and **DISMISSES** Plaintiff's Eighth Amendment claim as to all Defendants.

### 2. Fourteenth Amendment Due Process Claim

Plaintiff alleges that Defendants denied his Fourteenth Amendment right to procedural due process by forcibly medicating him without following CDC policies and procedures under *Keyhea* that guarantee certain procedural safeguards in such situations. (FAC at ¶¶ 21-23.) Defendants argue that Plaintiff fails to state a due process claim because adequate post-deprivation remedies exist and pre-deprivation process was impracticable given the seriousness of Plaintiff's medical state. (Defs.' Mem. at 6-7.)

### A. Due Process Standard in the Context of Involuntary Prisoner Medication

Ordinarily, interests protected by the Due Process Clause may arise from two sources—the Due Process Clause itself and state law. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, the Due Process Clause is usually implicated. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not state law authorized the changes. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). A prisoner can show a Fourteenth Amendment liberty interest only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id*. (citations omitted). Here, Plaintiff alleges a liberty interest in being free from forcible drugging by prison officials. Both California law and the Due Process Clause itself confer upon an inmate a right to be free from the arbitrary administration of anti-psychotic medication. *See Keyhea* Inj., *supra*; *Washington*, 494 U.S. at 221-22. As such, Plaintiff has met the threshold requirement under *Sandin*. *See* 515 U.S. at 484.

If a liberty interest is implicated, the prisoner must receive minimum due process prior to deprivation of that interest. *See Wilkinson v. Austin*, 545 U.S. 209, 229 (2005). In the context of involuntary medication, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with anti-psychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Washington*, 494 U.S. at 227. The decision whether to medicate an inmate against his will satisfies due process when facilitated by an administrative review by medical personnel not directly involved in the inmate's instant treatment. *Id.* at 233. Due process is satisfied if the inmate is provided with notice, the right to be present at an adversarial hearing, and the right to be present and cross-examine witnesses. *Id.* at 235. Appointment of counsel is not required; the provision of a lay advisor who understands the psychiatric issues involved is sufficient protection. *Id.* at 236.

The *Keyhea* injunction, incorporated by reference into Title 15 of the California Code of Regulations, section 3351,[5] allows for emergency administration of anti-psychotic medication. *Keyhea* Inj. at p. 22. "An emergency exists when there is a sudden marked change in the prisoner's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the patient or others, and it is impracticable to first obtain consent. If antipsychotic medication is administered during an emergency, such medication shall be only that which is required to treat the emergency condition and shall be provided in ways that are least restrictive of the personal liberty of the patient." *Id.* In addition, Harper's procedural protections may not apply in an emergency situation. In *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998), the Ninth Circuit appeared to agree that an emergency potentially could excuse compliance with notice and a pre-medication hearing, even though the facts of the case before it did not present an actual emergency. However, the *Kulas* court reiterated that,

> [t]o force anti-psychotic drugs on a prisoner or on a detainee awaiting trial is impermissible under the federal constitution, "absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada*, 504 U.S. 127, 135 (1992). The serious side effects that such medication can have on mind and personality, physical condition and life itself, have caused the court to lay down this rigorous test. *Harper*, 494 U.S. at 229-30. In the context of both *Harper* and *Riggins* such an invasion of the human person can only be justified by a determination by a neutral factfinder that the anti-psychotic drugs are medically appropriate and that the circumstances justify their application.

Id. at 455-56.

---

[5] Cal. Code Regs. tit. 15, § 3351 (a) (2007), "Inmate Refusal of Treatment," states in pertinent part:

Health care treatment, including medication, shall not be forced over the objections of: a mentally competent inmate; the guardian of a mentally incompetent inmate; or a responsible relative of a minor inmate, except in an emergency, or as required to complete the examination or tests for tuberculosis infection, or to implement the treatment for tuberculosis disease, or unless the provisions of Probate Code sections 3200 et seq. or the procedures set forth in *Keyhea v. Rushen*, Solano County Superior Court No. 67432, Order Granting Plaintiff's Motion for Clarification and Modification of Injunction and Permanent Injunction, filed October 31, 1986, hereby incorporated by reference, are followed. An emergency exists when there is a sudden, marked change in an inmate's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the inmate or others, and it is impracticable to first obtain consent.

California's *Keyhea* procedures differ from those approved in *Harper* in that the medication starts before the hearing occurs. Under the *Keyhea* procedures, doctors decide that medication is medically necessary and start the medication, with the hearing scheduled to be held within 10 days. Plaintiff alleges that Defendants failed to follow the *Keyhea* requirements and thus violated his due process rights; Defendants assert that they followed all appropriate procedures. Under the circumstances, this issue should be resolved as a motion for summary judgment which either party may bring before the Court at the appropriate juncture.

### B. Defendants' Argument that the *Parratt/Hudson* Doctrine Should Apply

Defendants acknowledge that the Fourteenth Amendment protects a person's liberty interest in being free from the unwanted administration of medication. (Defs.' Mem. at 6-7.) Defendants, however, argue that Plaintiff fails to state a valid due process claim because he had access, subsequent to the alleged forcible drugging, to both the prison grievance process and the California state tort claims process, and that these procedural remedies defeat a claim of constitutional violation. (*Id.* at 12-13.) Defendants rely on the United States Supreme Court's holdings in *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984), to argue that the availability of adequate post-deprivation remedies under state law forecloses any federal constitutional due process claim by Plaintiff in this case. (Defs' Mem. at 7.) Relying on this analysis alone, Defendants do not address the question of whether Plaintiff's allegations, considered without regard to the existence of post-deprivation remedies, state a cognizable Fourteenth Amendment claim.

Under limited circumstances, "a state can cure what would otherwise be an unconstitutional deprivation of 'life, liberty or property' by providing adequate post-deprivation remedies." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001.) The *Parratt/Hudson* doctrine "represent[s] a special case . . . in which post-deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon v. Burch*, 494 U.S. 113, 128

(1990); *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986).  The *Parratt*/*Hudson* doctrine appears to be most applicable when the case involves prisoners, minor constitutional infractions, and adequate post-deprivation tort claims.  *Daniel*s, 474 U.S. at 332-33; *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) ("*Parratt* and *Hudson* dealt with relatively  minor infractions of prisoners' interests in their personal property, and did not deal with official assaults, batteries, or other invasions of personal liberty.")  The doctrine states that post-deprivation remedies, including those in the form of a tort action under state law, pass constitutional muster if the government agent's actions were random or unauthorized.  *Zimmerman*, 255 F.3d at 738.  Neither a negligent act nor an intentional act deprives an individual of due process of law so long as the act was unauthorized or random.  *Daniels*, 474 U.S. at 328; *Hudso*n, 468 U.S. at 533.

For an act to be considered random, it must be shown that "the state administrative machinery did not, and could not, have learned of the deprivation until after it has occurred," making pre-deprivation hearings impracticable.  *Parratt*, 451 U.S. at 541 (in cases where the act is random and unauthorized, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur"); *Merrett v. Mackey*, 827 F.2d 1368, 1372 (9th Cir. 1987).  "[W]here the injury is the product of the operation of state law, regulation, or institutionalized practice, it is neither random nor unauthorized, but wholly predictable, authorized, and within the power of the state to control."  *Haygood*, 769 F.2d at 1357.  As such, the Ninth Circuit does not apply *Parratt* where a deprivation occurs because officials are acting according to established procedures—even if those established procedures violate other state or federal laws.  *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999) (citing *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir. 1985); *see also Haygood*, 769 F.2d at 1357 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)).

Defendants argue an inapplicable legal standard in this case.  In *Zinermon*, the Supreme Court clarified the reach of *Parratt* and *Hudson* and found the analogy to those cases inapplicable where the deprivation is not unpredictable, a pre-deprivation process is

not impossible or absurd, and the conduct of the defendants is not unauthorized. 494 U.S. at 136-39; *see also Zimmerman*, 255 F.3d at 738-39. The Court finds that the case at bar is governed by *Zinermon* and *Zimmerman* rather that *Parratt* and *Hudson*. The availability of post-deprivation remedies will only cure an unconstitutional deprivation when an official has acted in "random, unpredictable, and unauthorized ways." *Zimmerman*, 255 F.3d at 738. Post-deprivation remedies cannot save an unconstitutional act when the official acted pursuant to an established procedure. *Id. Parratt* and *Hudson* do not protect the Defendants in this action from a constitutional challenge. An inmate is entitled to certain procedural safeguards before he is medicated involuntarily. Plaintiff claims that these safeguards were not followed in his situation. Defendants, relying solely upon their misplaced application of the *Parratt*/*Hudson* doctrine to the facts of this case, fail to demonstrate how Plaintiff's allegations are inadequate to state a cognizable Fourteenth Amendment claim.

Plaintiff had a protected liberty interest in being free from involuntary medication under federal law. *Sandin*, 515 U.S. at 483; *Harper*, 494 U.S. at 221. Plaintiff alleges that Defendants denied him the procedural due process protections he is guaranteed under federal and California law. Plaintiff may or may not be able to prove that Defendants actually violated his constitutional rights. However, at the pleading stage, Plaintiff's allegations are sufficient to give rise to a claim for relief under section 1983.

The Defendants object to the Report and Recommendation's ("R&R") conclusion that Plaintiff may be able to state a cognizable Fourteenth Amendment Due Process claim on several grounds: (1) Defendants argue that "the Magistrate's conclusion that '[t]he *Parratt*/*Hudson* doctrine appears to be the most applicable when the case involves prisoners, *minor constitutional infractions*, and adequate post-deprivation tort claims'" is contrary to Supreme Court precedent; (2) the state law post-deprivation process comprises all the process that is due; (3) the Magistrate erred in concluding that *Zinermon* and *Zimmerman* control this case instead of *Parratt* and *Hudson*; (4) the Magistrate failed to identify the additional pre-deprivation process that could have been provided to

Plaintiff; and (5) the Magistrate fails to reconcile controlling Ninth Circuit case law cited in Defendants' memorandum. (Defs.' Objs. at 4.)

Defendants, in support of their first ground for objection, cite *Zinermon* to support their claim that the *Parratt/Hudson* doctrine's application is not dependent on the type of liberty interest at stake. (*Id.* at 5) (citing *Zinermon*, 494 U.S. at 124.) Defendants' claim is without merit, however, because the R&R's conclusion that the *Parratt/Hudson* doctrine does not apply did not rest on the liberty interest at stake. (*See* R&R at 9.) Rather, the R&R concluded that the *Parratt/Hudson* doctrine applies only to a government agent's random or unauthorized acts, for which pre-deprivation process would be impracticable. (*Id.*) In this case, Defendants' forcible drugging of Plaintiff was not random, and Defendants could have followed established *Keyhea* pre-deprivation procedures. Accordingly, the R&R correctly concluded that the *Parratt/Hudson* doctrine does not apply. Defendants then assume that the *Parratt/Hudson* doctrine should apply in asserting that "Plaintiff's state law postdeprivation remedies comprises all the process that is due." (Defs.' Objs. at 5.) Because the *Parratt/Hudson* doctrine does not apply, this objection is without merit.

Third, Defendants assert that neither "[Plaintiff] [n]or the Magistrate state what additional predeprivation procedures could have been provided before the alleged deprivation occurred in this case." (*Id.* at 5-6.) Plaintiff's FAC and the R&R both state that Defendants should have followed the established *Keyhea* pre-deprivation procedure. (FAC at ¶ 16; R&R at 8.)

Defendants also object on the ground that the R&R failed to distinguish *Raditch v. United States*, 929 F.2d 478, 479 (9th Cir. 1991), which Defendants claim is controlling Ninth Circuit precedent. (Defs. Objs. at 6-7.) In *Raditch*, the Office of Workers' Compensation Programs ("OWCP") terminated the petitioner's benefits without giving him notice and an opportunity to respond, and without following the OWCP's procedures for gathering the requisite medical evidence. *Raditch*, 929 F.2d at 480. The court held that the OWCP could compensate the petitioner for its employee's unauthorized violation

of established procedures through its post-deprivation procedures. *Id.* at 481-82. The case at hand involves not an unauthorized procedural violation, but instead, a "depriv[ation] of constitutional rights . . . by an official's abuse of his position." *See Zinermon*, 494 U.S. at 139 (quoting *Monroe v. Pape*, 365 U.S. at 167, 172 (1961). The United States Supreme Court, in *Zinermon*, addressed pre-deprivation safeguards:

> [W]hen [state] officials fail to provide constitutionally required safeguards to a person whom they deprive of liberty, the state officials cannot then escape liability by invoking *Parratt* and *Hudson*. It is immaterial whether the due process violation [the prisoner] alleges is best described as arising from petitioner's failure to comply with state procedures for admitting involuntary patients, or from the absence of a specific requirement that petitioners determine whether a patient is competent to consent to voluntary admission.

*Id.* at 135-36.

In the instant case, as in *Zinermon*, the State delegated to prison officials the "power and authority to effect the very deprivation complained of . . . and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law. . . ." *See id.* at 138. In both *Zinermon* and in the case at hand, the prison officials disregarded their duty to comply with established pre-deprivation procedures. *See id. Raditch* is inapplicable and *Zinermon*'s clear command controls this case's outcome. Accordingly, the Court **DENIES** Defendants' motion to dismiss in part and allow Plaintiff to pursue his Fourteenth Amendment due process claim.

### 3. State Law Tort Claims: Compliance with the California Tort Claims Act

Plaintiff also alleges claims for negligence against all defendants under California state law. (FAC at ¶¶ 21-23.) Defendants argue that Plaintiff's state law claims should be dismissed for failure to file a timely government claim pursuant to California Tort Claims Act ("CTCA"), California Government Code sections 900 *et seq*. (Defs.' Mem. At 1.) The District Court previously granted Defendants' motion to dismiss Plaintiff's state law claims, after adopting this Court's finding that Plaintiff failed to demonstrate compliance with the CTCA. (Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss at 9.) The court granted Plaintiff leave to amend, and Plaintiff added a single revised allegation to his FAC, stating that his "state law claim was filed on February 9,

2006, and he had not received a response, nor was his claim returned, more than forty-five days later." (FAC at ¶ 11.) Defendants argue that Plaintiff's revised allegation once again fails to demonstrate compliance with the CTCA, primarily because the claims board has no record of Plaintiff's claim having been filed, and secondarily, because even if Plaintiff did file his claim as he states, he did so in an untimely manner. (Defs.' Mem. At 15.)

The CTCA requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. *See* Cal. Gov't. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the CTCA. *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988). Although Plaintiff has demonstrated successfully that he utilized the prison grievance process to exhaust his federal claims by filing an inmate appeal, and has attached documentation in the form of his CDC 602 form and administrative responses, these documents do not satisfy the CTCA with respect to his state law negligence claims. Plaintiff's allegation in Paragraph 11 of his complaint is a cursory statement, which even construed as liberally as possible by the Court, remains insufficient to demonstrate compliance with the CTCA. Plaintiff provides no facts related to when such a claim was made, and attaches no proof to his complaint that any claim was filed. Defendants, on the other hand, present certified copies of every claim on record filed by Plaintiff with the Claims Board between 2002 and August 2006. (*See* Decl. Of Daisy Sanchez in Supp. Defs.' Mot. to Dismiss, Ex. A.) Plaintiff filed three separate claims during that period, none of which involve his complaint of being

involuntarily medicated.[6]  Accordingly, the Court **GRANTS IN PART** Defendants' motion to dismiss and **DISMISSES** Plaintiff's state law negligence claim as to all Defendants.

### 4. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity because, based on the circumstances under which Plaintiff was forcibly medicated, it would not have been clear to a reasonable government official that Plaintiff's rights were being violated. (Defs.' Mem. at 19.)  Qualified immunity shields government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  Generally, the qualified immunity doctrine must "give[] ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Even if no constitutional violation occurred, the officer should prevail if the plaintiff's right "was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

To analyze a qualified immunity claim, a court must first determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants violated the claimant's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court determines the facts alleged could show violation of a constitutional right, the second step requires determining "whether the right was clearly established." *Id.* at 201.  The relevant inquiry focuses on "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208.  The plaintiff bears the burden of proving that the right allegedly

---

[6] Plaintiff's three claims were filed and recorded as follows: 1) Claim No. G54116, regarding prison guards' failure to protect Plaintiff from an assault on or about December 17, 2004; 2) Claim No. G553195, regarding prison guards' confiscation of Plaintiff's personal property from his cell on or about November 2004; and 3) Claim No. G554250, regarding deprivation of Plaintiff's personal property by prison guards.

violated was clearly established at the time of the violation. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Here, Plaintiff has presented a cognizable Fourteenth Amendment claim. During the time period of Defendants' alleged acts, an inmate's right to be free from the arbitrary administration of anti-psychotic medication was clearly established by existing case law. *See Washington v. Harper*, 494 U.S. 210, 221-22 (1989). The question, therefore, is whether any or all of the defendants reasonably could have believed that their conduct was lawful. Defendants argue that they were acting to the best of their knowledge under appropriate *Keyhea* protocol when medicating Plaintiff against his will, and therefore they are entitled to qualified immunity. (Defs.' Mem. At 18-19.) The Court finds that the key question is more properly resolved on a motion for summary judgment or at trial, when Defendants may present evidence in support of their claim, and the Court may properly consider such evidence. Defendants' mere assertion of good faith is insufficient to support a complete defense at this stage in the litigation. The Court cannot conclude at this juncture that a reasonable official in any of the various defendants' positions would have believed that Plaintiff's extended period of involuntary medication was authorized and that their conduct was lawful in light of Plaintiff's allegations that the required stringent procedures were not followed.

Defendants object to the R&R's finding that they are not entitled to qualified immunity on the grounds that facts in Plaintiff's complaint contradict Plaintiff's claim that reasonable officials in Defendants' positions should have known their conduct was unlawful. (Defs.' Objs. At 7-8.) Defendants point to Plaintiff's statement that prison officials "were aware of [Plaintiff] being on *Keyhea* when they cell extracted him or gave him his medications." (*Id.* at 8.) Defendants contend that this statement proves that prison officials administered Plaintiff's medication based on their good-faith belief that they were authorized to do so. (*Id.*) This single statement does not conclusively establish that the prison officials actually believed Plaintiff was under a valid *Keyhea* order. This Court liberally construes *pro se* pleadings. *See Castro v. United States*, 540 U.S. 375,

381-82 (2003).  Accordingly, this Court will not dismiss Plaintiff's complaint based on a single ambiguous statement.

Defendants also contend that the written response to Plaintiff's administrative grievance shows that prison officials complied with *Keyhea* procedures.  (Defs. Objs. At 8.)  Defendants assert that "[n]owhere else in Plaintiff's complaint are these facts disputed or contradicted."  (*Id.*)  Those facts are flatly contradicted by Plaintiff's allegation that prison staff failed to follow *Keyhea* procedure.  (FAC at ¶ 16.)  This Court cannot resolve this issue in Defendants' favor unless they can present conclusive evidence that they made a good-faith attempt to follow *Keyhea* protocol.

Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether Defendants are entitled to qualified immunity.  Therefore, the Court **DENIES** without prejudice Defendants' claim that they are entitled to qualified immunity.

### *Conclusion*

For the reasons stated above, the Court **ADOPTS** the Report & Recommendation and **DENIES** Petitioner's Petition for Writ of Habeas Corpus.

DATED:  December 28, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Stormes
     All Parties of Record